UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUSHAWN ROBINSON,

                              Plaintiff,

        -against-

JAKE KNIBBS, J. VAN HAYWRIGHT, DANIEL
TARALLO, DR. DIANE SOMMER, FCI OTISVILLE -
BUREAU OF PRISON,

                              Defendants.

No. 16-cv-3826 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Loushawn Robinson brings this action *pro se* against Defendants Jake Knibbs

("Knibbs"), J. Vander Hey-Wright ("Vander Hey-Wright"),[1] Daniel Tarallo ("Tarallo"), Diane

Sommer, M.D. ("Sommer"), the Federal Correctional Institution – Otisville, Bureau of Prisons

("FCI Otisville"), and the United States[2] (collectively, "Defendants"). Plaintiff asserts a *Bivens*[3]

claim against the individually named Defendants for deliberate indifference toward serious

medical needs caused by pain from an ankle fracture sustained while incarcerated at Otisville, and

a negligence claim against the United States under the Federal Tort Claims Act ("FTCA"), 28

---

[1] This Defendant's name is spelled as "Van Haywright" in Plaintiff's Complaint. (*See, e.g.,* Compl. at 1, ECF No. 1.)
The proper spelling of her surname appears to be Vander Hey-Wright. (*See* Def. Mem. at 2.)

[2] On July 21, 2016, this Court directed the Clerk of Court to amend the case caption to add the United States as a
Defendant. (*See* ECF No. 11.)

[3] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*").

U.S.C. §§ 1346(b). Before this court is Defendant's motion to dismiss. For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint, ECF No. 1, unless otherwise indicated.

On May 21, 2014, Plaintiff Loushawn Robinson who at the time was an inmate at the Federal Correctional Institution at FCI Otisville, sought medical care from Defendant Jake Knibbs ("Knibbs"), an Emergency Medical Technician/Physician at the facility, for pain he was experiencing in his left foot. (Compl. at 2.) Plaintiff alleges that although he was "distressed, with a lot of pain" in his left foot, given the time of day, Knibbs did not want to send him to the hospital or "deal with paper work." (*Id.*) Instead, Knibbs instructed him to seek treatment at FCI Otisville's "sick call" the next day. *Id.* at 4. Pursuant to these instructions, on May 22, 2014, Plaintiff went to "sick call" to seek treatment for his foot, which was swelling and causing Plaintiff "shooting, throbbing pain." *Id.* While at sick-call, Plaintiff saw Defendant Vander Hey-Wright, a Physician's Assistant. *Id.* Plaintiff alleges that Vander Hey-Wright told Plaintiff he needed to wait to see his assigned medical care provider, Defendant Physician's Assistant Tarallo, to address the pain in his foot. *Id.*

On May 28, 2014, Plaintiff was seen by Defendant Tarallo, who took an x-ray of Plaintiff's left foot, revealing a "fifth metatarsal base fracture." *Id.* at 5. Defendant Tarallo provided Plaintiff with a prescription to purchase painkillers, and instructed him to purchase the medication through commissary. *Id.* Plaintiff alleges that he did not have sufficient funds in his commissary account and could not purchase the pain medication at that time. *Id.*

2

On June 5, 2014, Plaintiff was taken to Crystal Run Healthcare in Middletown, New York, a medical facility outside of FCI Otisville, where he received a prescription for Percocet. *Id.* at 3. Plaintiff alleges that he never received medication upon his return to FCI Otisville, and that Defendant Knibbs told him if he requested the pain killers, "they [would] put [him] in the []hole, that will be the only way [he] will get them." (*Id.*)

Plaintiff also names Dr. Sommer, the Clinical Director at FCI Otisville, as a Defendant, claiming that she was aware of, and took no actions to address her staff's alleged misconduct. (*Id.* at 4.) Finally, Plaintiff also names FCI Otisville, the facility, as a Defendant.

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim

is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction … when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits ...." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Furthermore, with regard to *pro se* Plaintiffs, the Court must "'construe [ ] [the] [Complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].'" *Martinez v. Aycock-W.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir.2013). Yet, "the liberal treatment afforded to pro se litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F.Supp.2d 555, 559 (S.D.N.Y.2013) (emphasis added) and citing *Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir.2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.")).

## DISCUSSION

### I.    Plaintiff's *Bivens* Claims

Under *Bivens v. Six Unknown Named Agents*, 456 F.2d 1339 (1972), a plaintiff may bring a claim against a federal officer in her personal capacity for a violation of certain constitutional

rights. "To state a claim under *Bivens*, a plaintiff must allege that an individual defendant personally committed a specific wrongful act that violated a well-established constitutional right of which a reasonable person would have known." *Adekoya v. Holder*, 751 F. Supp. 2d 688, 694 (S.D.N.Y. 2010) (citing *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987)); *see Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, 521 F. Supp. 2d 276, 281 (S.D.N.Y. 2007) ("The elements of a *Bivens* claim are: (1) that a defendant acted 'under color of federal law' (2) 'to deprive plaintiff of a constitutional right.'") (quoting *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)).

### a. *Bivens* Claims Against Federal Agencies & Employees Named in Their Official Capacity

A *Bivens* action can lie only against individual federal employees, officials or agents in their personal capacities -- not against the United States, federal agencies or officers in their official capacities. *See Lipscomb v. Hufford*, 14-CV-6562 (NSR), 2017 WL 3267732, at *5 (S.D.N.Y. July 28, 2017) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)); *see also Keene Corp. v. United States*, 700 F.2d 836, 845 n.13 (2d Cir. 1983) ("*Bivens*-type actions against the United States are ... routinely dismissed for lack of subject matter jurisdiction."); *Banks v. United States*, 10-CV-6613 (GBD) (GWG), 2011 WL 4100454, at *8 (S.D.N.Y. Sept. 15, 2011), *report and recommendation adopted*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011) ("where a *Bivens* action is filed against the United States, its agencies, or its employees in their official capacities, courts lacks jurisdiction to hear the claim and the action must be dismissed") (internal citations omitted). Thus, any claim that Plaintiff may be asserting under *Bivens* against the United States; FCI Otisville, a federal agency; or against the individually named Defendants in their official capacity must be dismissed pursuant to Rule 12(b)(1).

**b. Defendant Vander Hey-Wright**

Plaintiff alleges that Vander Hey-Wright failed to provide him with adequate medical care by "turn[ing] [him] away" from sick call rather than treating him, taking him to an outside hospital, or ensuring he was seen by a professional practitioner on the same day. (*See* Compl. at 5.) Defendants argue that any *Bivens* claims asserted against Vander Hey-Wright must be dismissed for lack of subject matter jurisdiction because she is absolutely immune from such claims as an employee of the Public Health Service ("PHS"), pursuant to the Public Health Service Act, 42 U.S.C. § 233(a) ("PHSA"). (*See* Def. Mem. at 5.)

The Supreme Court has interpreted the PHSA as "grant[ing] absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799 (2010). Accordingly, "§ 233(a) precludes *Bivens* actions against individual PHS officers or employees for harms arising out of conduct described in that section." *Id.* at 1854; *see Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (the PHSA "protects commissioned officers or employees of the [PHS] from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead.").

Under 42 U.S.C. § 233(a), the Federal Torts Claim Act is the "exclusive remedy" for any claim "resulting from the performance of medical, surgical, dental or related functions ... by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." 42 U .S.C. § 233(a); *Warrender v. United States*, 09-CV-2697 (KAM) (LB), 2011 WL 703927, at *4 (E.D.N.Y. Feb. 17, 2011). In a sworn declaration accompanying Defendants' motion, Vander Hey-Wright states that she has been an employee of the PHS for the

past twenty years, that in her capacity as a PHS member she is assigned to FCI Otisville as a Physician Assistant, and has held this assignment since July 2012. (Vander Hey-Wright Decl. in Support of Def. Mot. to Dismiss ("Vander Hey-Wright Decl."), ECF No. 22.) Vander Hey-Wright's PHS Assignment Order is annexed to her declaration. (*Id.*, Ex. A.) "When a party raises a 'factual' challenge to jurisdiction, as defendant Vander Hey-Wright does here, the Court may refer to evidence outside the pleadings." *Gist v. Sommer*, 14-CV-6736 (VB), 2016 WL 4083437, at \*2 (S.D.N.Y. Aug. 1, 2016)[4] (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). As this motion is uncontested, this assertion is undisputed, and the Court finds that Vander Hey-Wright was in fact commissioned by the PHS.

At the time of the acts alleged in the Complaint, Vander Hey-Wright was a PHS employee acting within the scope of her employment. (*See* Vander Hey-Wright Decl.) The Complaint alleges that she provided inadequate medical treatment because she turned Plaintiff away from sick call, and advised him to see his assigned physician. (Compl. at 4.) The Second Circuit has held that immunity under the PHSA extends to alleged constitutional violations based upon the denial of adequate medical treatment. *Cuoco*, 222 F.3d at 107-08; *Mimms v. Carr*, 09-CV-5740 (NGG) (LB), 2011 WL 2360059, at \*11 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013) ("Section 233(a) specifically extends this immunity to civil actions based on an 'omission.'"); *see also Gist*, 2016 WL 4083437, at \*2 (dismissing claims against Defendant in this action for failure to provide adequate medical treatment due to immunity under the PHSA). Given Plaintiff's *Bivens* claim is premised upon a denial of adequate medical care, this claim is dismissed for lack of subject matter jurisdiction.

---

[4] The Court notes that this case also involved the same Defendant Vander Hey-Wright.

### c. Plaintiff's Eighth Amendment *Bivens* Claims Against Remaining Individuals

Plaintiff's allegations against the remaining Defendants are similarly premised upon a failure to provide adequate medical care. The Eighth Amendment forms the basis of a convicted prisoner's claim that he was denied adequate medical treatment, because the right Plaintiff seeks to vindicate stems from the Eighth Amendment's prohibition of "cruel and usual punishment." *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 300 (S.D.N.Y. 2016); *see Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (overruled on other grounds) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)).

To assert that medical treatment provided by the remaining Defendants was so inadequate that it could constitute an Eighth Amendment violation, Plaintiff must demonstrate that "the defendant['s] actions or omissions amounted to 'deliberate indifference to a serious medical need.'" *Shuler v. Edwards*, 485 F. Supp. 2d 294, 297–98 (W.D.N.Y. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This test has both a subjective and objective component, requiring a plaintiff to plausibly allege: "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities," and "(2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Martinez*, 164 F. Supp. 3d at 510–11 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).

### i. Objective Prong of Deliberate Indifference Claim

Generally, "[o]nly an 'unquestioned and serious deprivation of basic human needs' or of the 'minimal civilized measure of life's necessities' will constitute a violation of Plaintiff's Eighth Amendment rights." *Martinez*, 164 F. Supp. 3d at 511 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To determine whether there has been an objectively, sufficiently serious deprivation

courts consider "whether the prisoner was actually deprived of adequate medical care," and if so, whether "the inadequacy in medical care [was] sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 278–79 (2d Cir. 2006). Harm is considered "sufficiently serious" if it could "produce death, degeneration, or extreme pain," *Hill v. Curcione*, 657 F3d. 116, 122 (2d Cir. 2011) (internal quotation marks and citations omitted), *or* "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### ii.  Subjective Prong

To satisfy the subjective component of a deliberate indifference claim a plaintiff must plausibly allege that the defendant "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U .S. 825, 834 (1994); *see Salahuddin*, 467 F.3d at 280 (requisite mental state "requires that ... [defendant] act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result.") (internal quotation marks and citations omitted). Thus, the mental state required has been described as one akin to "recklessness" in criminal law. *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002). The Court notes that simple negligence, or inadvertent failure to provide adequate medical care, even if it amounts to medical malpractice, is not enough to plausibly allege deliberate indifference to an inmate's Eighth Amendment rights. *Pabon v. Wright*, 459 F.3d 241, 248 at *10 (2d Cir. 2006); *see Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (noting that "negligent malpractice does not state a claim of deliberate indifference."); *see also Torres v. Alers*, 04-CV-1127 (LAP), 2005 WL 2372741, at *3 (S.D.N.Y. Sept. 26, 2005) ("At most, Defendant might be accused of negligence in failing to order an x-ray

of Plaintiff's ankle, but ... simple negligence, even if it amounts to medical malpractice, does not establish deliberate indifference.").

### iii. Application

#### a. Defendant Knibbs

Plaintiff asserts that Defendant Knibbs delayed Plaintiff's initial receipt of treatment by instructing him to seek treatment at FCI Otisville's "sick call" with his assigned physician on the following day instead of treating him. (*See* Compl. at 2.) Plaintiff also alleges that after Defendant had been seen by medical staff and treated both within and outside of FCI Otisville, Knibbs threatened to "put him in the hole" if he attempted to fulfill his pain prescription. (*Id.* at 3.)

The Court first addresses the allegation that Knibbs delayed Plaintiff's treatment. Where the allegation is that the treatment "ha[s] been delayed or interrupted, the seriousness inquiry [of the objective prong] focuses on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition considered in the abstract." *Rosseter v. Annetts*, 10-CV-1097 (NAM) (TWD), 2012 WL 4486082, at *9 (N.D.N.Y. June 29, 2012), *report and recommendation adopted*, 2012 WL 4482858 (N.D.N.Y. Sept. 27, 2012) (internal quotation marks and citations omitted); *see Gantt v. Horn*, 09-CV-7310 (PAE), 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013) ("In cases where temporary delays or interruptions in the provision of medical treatment have been held to satisfy the objective seriousness requirement, they have involved either a needlessly prolonged period of delay or a delay that caused extreme pain or exacerbated a serious illness."); *Demata v. New York State Correctional Dept. of Health Services*, 198 F.3d 233 (table) (2d Cir. 1999) (citing *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990)) (instances where delay in medical care could rise to the level of

10

deliberate indifference generally reserved for occasions where officials ignored a "life-threatening or fast-degenerating" condition or delayed major surgery for years).

Plaintiff alleges that as a result of the delay in medical treatment, he experienced "more harm" and swelling, shooting and throbbing pain. (Compl. at 2, 3.) These allegedly exacerbated injuries are not sufficiently serious as a matter of law to satisfy the objective prong of a deliberate indifference claim. *See, e.g., Bonner v. New York City Police Dep't*, 99-CV-3207 (AGS), 2000 WL 1171150, at *1 (S.D.N.Y. Aug. 17, 2000) (inability to "close" a finger due to inadequate treatment of swelling in one's hand not sufficiently serious to establish deliberate indifference claim); *Chatin v. Artuz*, 95-CV-7994 (KTD), 1999 WL 587885, at *4-6, 11 & n.5 (S.D.N.Y. Aug. 4, 1999), *aff'd*, 28 F. App'x 9 (2d Cir. 2001) (prisoner's foot condition, which involved pain and swelling was not sufficiently serious). As such, the Court cannot find that the delay caused by Knibbs was "needlessly prolonged" or, considering the alleged resulting afflictions, created harm, or a risk of harm sufficiently serious to satisfy this prong.[5]

Nor does Plaintiff plausibly allege the subjective prong of his deliberate indifference claim against Knibbs for the initial delay in treatment. To do so, Plaintiff would have to allege facts

---

[5] As to the underlying injury, the Court also notes that injuries both similar to and of a more severe nature than Plaintiff's have not been found to rise to the level of a "serious medical condition" warranting Eighth Amendment protection. *See Chatin v. Artuz*, 28 F. App'x 9, 10 (2d Cir. 2001) (Plaintiff's "condition, which medical staff diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires."); *Sloane v. Borawski*, 64 F. Supp. 3d 473, 494 (W.D.N.Y. 2014) ("broken ribs, an ankle fracture and a lower right-side back injury" not sufficiently serious to meet objective prong); *see also Patterson v. Westchester Cnty*, 13-CV-9194, (PAC) (AJP), 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014), *report and recommendation adopted*, 13-CV-0194 (PAC) (AJP), 2014 WL 2759072 (S.D.N.Y. June 16, 2014) (finding plaintiff's torn ankle ligaments did not establish serious medical and noting "[u]nlike cases where injuries demonstrate the requisite urgency leading to death, degeneration or extreme pain, the case law holds that prisoner complaints about ligaments or other ankle problems do not establish the objective prong of the deliberate indifference standard"); *Bonner v. New York City Police Dep't*, 99–CV–3207, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (holding that the inability to "close" a finger due to inadequate treatment of swelling in one's hand is not sufficiently serious to constitute Eighth Amendment violation because the "[c]ourt could [not] conclude plaintiff suffered or suffers from a condition that may produce death, degeneration, or extreme pain"); *but see Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (*chronic* pain can qualify as a sufficiently serious condition) (emphasis added).

sufficient to demonstrate that Knibbs instructed Plaintiff to wait and seek medical attention on the following day with knowledge that the delay could have resulted in a substantial risk of harm to him. Plaintiff has alleged no facts from which the Court could infer that there was a substantial risk of harm, let alone that Knibbs acted or failed to act with knowledge of this risk. Nor does Plaintiff allege any facts that would permit the Court to infer that Knibbs was aware Plaintiff would be denied treatment at sick-call, and that the delay in treatment would last more than a day. For these reasons, Plaintiff also fails to meet the subjective prong of his deliberate indifference claim against Knibbs for a delay in medical treatment, and as such, any Bivens claim against Knibbs premised upon the initial delay in treatment is dismissed without prejudice.

However, Plaintiff has plausibly alleged a *Bivens* claim against Knibbs for interfering with his medical treatment by allegedly threatening to place him in solitary confinement if he attempted to obtain his medically prescribed painkillers. A prison guard's intentional interference with prescribed treatment can in fact form the basis of a deliberate indifference claim. *Estelle v. Gamble*, 50 L. Ed. 2d 251, 260 (1976); *Ford v. Spears*, 10-CV-1314 (RJD) (LB), 2012 WL 4481739, at *11 (E.D.N.Y. Sept. 27, 2012) (plaintiff can show [d]eliberate indifference to [his] serious medical needs by pointing to ... prison guards' interference with prescribed treatment.") (internal quotations marks, citations and alterations omitted). Furthermore, "the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death" but also less serious denials that perpetuate pain. *Brock*, 315 F.3d at 163 (*quoting Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977)); *see id.* ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such a pain."); *see also McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("[P]rison officials may violate the Eighth Amendment by failing to treat an inmate's

12

pain."). As such, allegations that pain medication has been, for instance, persistently withheld, resulting in more severe pain, can serve as the basis for a deliberate indifference claim. *See Keith v. All United States Bureau of Prisons Employees*, 5:16-CT-3295 (BO), 2017 WL 3301219, at *3 (E.D.N.C. June 26, 2017), *report and recommendation adopted sub nom.*, 2017 WL 3298459 (E.D.N.C. Aug. 2, 2017) "([A]llegation that [plaintiff's] prescribed pain medications have been withheld from him is sufficient to allege an Eighth Amendment claim of deliberate indifference and he may proceed with this claim"); *Coletta v. Bd. of Freeholders*, CIV-A-06-585 (MLC), 2007 WL 128893, at *7 (D.N.J. Jan. 12, 2007) ("Prison officials and medical personnel may be liable for deliberate indifference where an inmate is persistently denied access to necessary, prescribed medication on numerous occasions."); *see also Pina v. Gomez*, C-94-4161 (SI), 1999 WL 13708, at *3–4 (N.D. Cal. Jan. 7, 1999), *aff'd*, 205 F.3d 1352 (9th Cir. 1999) ("Pain killers may be considered a serious medical need").

Plaintiff alleges that he was prescribed Percocet for pain by a doctor from an outside medical facility, but that as a result of Knibb's threats he never received that medication, or any pain medication for that matter, although his condition was "very painful." (*See* Compl. at 3.) Plaintiff also alleges that at this time, his foot was still fractured and that the base of his foot was "still *opening*." (Compl. at 3.) Based upon these allegations, it is reasonable to infer that the harm caused by the denial of pain medication was sufficiently serious in that it perpetuated continuous, significant pain unnecessarily, and led to a needlessly prolonged period of delay in Plaintiff's receipt of medical treatment. *See Gantt v. Horn*, 09-CV-7310 (PAE), 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013) (noting needlessly prolonged period of delay, and delay causing significant pain both satisfy objective seriousness requirement); *see also Brock*, 315 F.3d at 163 ("less serious" denials of medical care that cause or perpetuate pain are "forbid[den]" under the

Eighth Amendment). As such, Plaintiff's allegations satisfy the objective prong of the deliberate indifference standard.

Regarding the subjective prong, the Court finds it is also reasonable to infer that Knibbs knew Plaintiff had been suffering from pain in his foot for at least fifteen days prior to the day he allegedly threatened Plaintiff,[6] that Plaintiff received treatment for his injury, received a prescription for and therefore required Percocet (as opposed to, for instance, ibuprofen), and that he needed to request this medication in order to obtain it. Thus, construing the Complaint liberally, as the Court must at this stage, the undersigned concludes that Plaintiff has adequately alleged that Knibbs knew of the substantial risk of harm associated with the denial of pain medication and disregarded that risk when he threatened to place Plaintiff in solitary confinement if he attempted to obtain the medically prescribed pain killers. *See McElligott*, 182 F.3d at 1257 ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."). Therefore, Plaintiff has satisfied the subjective prong as to this claim, and his deliberate indifference claim against Knibbs for interfering in his medical treatment survives at this stage.

### b. Defendant Tarallo

Plaintiff alleges that Defendant Tarallo failed to provide him with adequate medical care by providing him with a prescription for pain medication only, rather than the medication itself, and directing him to seek the medication from commissary although Plaintiff lacked the financial

---

[6] The Court refers to the time between May 21, 2014, when Defendant first complained to Knibbs of pain in his foot and the date that Knibbs threatened him, which could not have been earlier than June 5, 2014, when Plaintiff saw a physician outside of FCI Otisville and received the prescription for Percocet. (*See* Compl. at 4, 3.)

means to do so. Plaintiff also alleges Tarallo provided inadequate care by failing to transport him to a hospital outside of Otisville when he saw him on May 28, 2014. *Id.*

As to Plaintiff's first allegation against Tarallo, even assuming, without deciding, that Plaintiff alleges a risk of harm associated with Plaintiff's inability to obtain medication sufficient to satisfy the objective prong, Plaintiff has not alleged that Tarallo acted with knowledge that Plaintiff lacked the funds in his account to obtain medication through commissary, or that he knew of and disregarded any significant risk of harm to Plaintiff. *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs."); *see also Gumbs v. Dynan*, 11-CV-857 (RRM) (LB), 2012 WL 3705009, at *13 (E.D.N.Y. Aug. 26, 2012) (quoting *Hathaway*, 37 F.3d at 67) ("The individual defendants' alleged advice for plaintiff to purchase mediation from the commissary once his prescription medication ran out, even if true, does not show that [he] "knew of and disregarded an excessive risk" to plaintiff's health). Because Plaintiff's allegations fail to satisfy the subjective prong, his deliberate indifference claim against Tarallo on this basis is dismissed.

As to Plaintiff's contention that Tarallo should have arranged to transport him to a hospital on the same day he treated him, relevant law dictates that such an allegation amounts to a difference of opinion as to appropriate medical treatment, which is not actionable under the Eighth Amendment. *See Ventura v. Sinha*, 01-CV-434 (WMS), 2008 WL 365866, at *10 (W.D.N.Y. Feb. 11, 2008), *aff'd*, 379 F. App'x 1 (2d Cir. 2010) (allegations that there was a two-week delay between incident and visit to orthopedist "establishes" at "best ... that Plaintiff did not agree with the level of medical care he received after the incident. This does not raise a constitutional claim."); *Wandell v. Koenigsmann*, 99-CV-8652 (WHP), 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000)

("it is well established that mere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment violation.") (citing *Muhammad v. Francis*, 9-CV-2244 (SS), 1996 WL 657922, at *6 (S.D.N.Y. Nov. 13, 1996) (internal citations omitted)); *Muhammad v. Francis*, 94-CV- 2244 (SS), 1996 WL 657922, at *7 (S.D.N.Y. Nov. 13, 1996) (even if prison doctor could have obtained earlier examination by non-prison orthopedist, roughly three-month delay in obtaining consultation regarding painful but non-life-threatening condition was not deliberate indifference). Accordingly, the Court must dismiss Plaintiff's deliberate indifference claims against Tarallo, but does so without prejudice.

### c. Defendant Sommer

As to Sommer, Plaintiff alleges that she was aware of her staff's actions, "and didn't do anything." (Compl. at 6.) Defendant argues Plaintiff fails to allege Sommer's personal involvement in any unconstitutional violations. (*See* Def. Mem. at 9.)

*Respondeat superior* does not provide a basis for liability in the *Bivens* context; instead, Plaintiff must plausibly allege defendant's personal involvement in order for his claim to survive at this stage. *Thomas v. Ashcroft*, 470 F.3d 491, 498 (2d Cir.2006). To state the personal involvement of a supervisory defendant, a plaintiff must allege that the defendant: "(1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring." *Id.* at 496–97 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Notably, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v.*

16

*Goord,* 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright,* 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority). Plaintiff alleges only that Sommer was aware of her staff's conduct and failed to act, without further elaboration or detail. Absent more, these allegations are conclusory and do not suffice to allege a plausible claim of Sommer's personal involvement as a supervisor. *Morgan v. Ward,* 14-CV-7921 (GHW), 2016 WL 427913, at *7 (S.D.N.Y. Feb. 2, 2016) (supervisory liability not plausibly alleged where complaint asserts defendant failed to prevent unconstitutional activities despite knowledge of acts as these alone are "bare assertions, conclusions and formulaic recitations of the elements of supervisory liability ... devoid of non-conclusory factual allegations describing how [defendant] was involved in the alleged constitutional violations"). As such, Plaintiff's *Bivens* claim against Sommer is dismissed without prejudice.

## II.    Qualified Immunity

The qualified immunity doctrine protects federal and state officials from suit for acts undertaken in their official capacity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Id.* (citing *Martinez v. Simonetti,* 202 F.3d 625, 633-34 (2d Cir. 2000)). Because the Court finds that the Complaint fails to state a claim for a violation of Plaintiff's constitutional rights against Tarallo or Sommer, the Court need not address whether they are "qualifiedly immune to suit from the *Bivens* claim." *Skyers v. Sommer,* 12-CV-3432, 2016 WL 4484241, at *6 (S.D.N.Y. Aug. 23, 2016).

As to Defendant Knibbs, with regard to Plaintiff's allegation that he presumably threatened to place Plaintiff in solitary confinement if he requested his medically prescribed pain killers,

Defendants do not argue that his conduct did not violate a clearly established constitutional right, or that it was objectively reasonable for Knibbs to believe that he had not violated any of Plaintiff's constitutional rights.[7] Because Plaintiff has plausibly alleged a violation of his clearly established Eighth Amendment right to be free of deliberate indifference to serious medical needs, as delineated above, Defendant Knibbs is not entitled to qualified immunity.

## III.  Plaintiff's FTCA Tort Claims

Defendants argue that any FTCA claims asserted by Plaintiff must be dismissed for lack of subject matter jurisdiction. (*See* Def. Mem. at 11.) Pursuant to the FTCA, tort claims against the United States must be "presented in writing to the appropriate Federal agency within two years after such claim accrues" or within six months of when the agency has issued its final denial of administrative remedy. 28 U.S.C. § 2401(b); *see also* 28 U.S.C. § 2675(a). "Failure to exhaust the agency's administrative remedies within the statute of limitations will render the claim 'forever barred.'" *Castellanos v. Elrac Inc.*, 07-CV-2191 (DLE) (KAM), 2008 WL 919641, at *2 (E.D.N.Y. Apr. 3, 2008) (citing 28 U.S.C. § 2401(b)). This requirement is jurisdictional and cannot be waived. *See id.* (citing *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

In support of their motion, Defendants offer a sworn declaration from Adam Johnson, a Supervisory Attorney employed by the Federal Bureau of Prisons, indicating his search of a database of inmates' administrative tort claims reveals that Plaintiff has not filed an administrative tort claim, or Form SF-95 in connection with the allegations in the Complaint.[8] "Where, as in this

---

[7] *See Morgan v. Ward*, 1:14-CV-7921 (GHW), 2016 WL 427913, at *9 (S.D.N.Y. Feb. 2, 2016) (The defendants have not argued that [defendant] should be entitled to qualified immunity if the complaint adequately asserts that she was personally involved in the alleged constitutional violations. Therefore, the Court has no basis at this time to conclude that [defendant] is entitled to qualified immunity.").

[8] The Court takes judicial notice of these records. *See Artis v. Velardo*, No. 7:14-CV-0833 (NSR), 2016 WL 154122, at *3 n.1 (S.D.N.Y. Jan. 12, 2016) (citing *Zappulla v. Fischer*, 11-CV-6733 JMF, 2013 WL 1387033, at *1 (S.D.N.Y.

18

case, 'exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein' … When a court considers documents outside the four corners of the complaint, it is not required to accept as true facts alleged in the complaint that are contradicted by the documents." *Zappulla v. Fischer*, 11-CV-6733 (JMF), 2013 WL 1387033, at *1 (S.D.N.Y. Apr. 5, 2013) (citing *Wilson v. N.Y.C. Police Dep't*, 09-CV-2632 (PAC) (HBP), 2011 WL 1215031, at *6 (S.D.N.Y. Feb. 4, 2011), *report and recommendation adopted*, 2011 WL 1215735 (S.D.N.Y. Mar. 25, 2011) and *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 149 n.1 (2d Cir. 2012)). Although Plaintiff alleges he "exhausted his administrative remedies all the way to central office" and provides remedy identification numbers, it appears that he refers only to his *Bivens* claims. However to the extent that these statements refer to Plaintiff's FTCA claims, the documentation offered by Defendants refutes this assertion. Plaintiff has not opposed this motion, and therefore offers no explanation of any attempts to avail himself of the agency's administrative remedies with regard to his FTCA claims. *Id.* Consequently, Plaintiff's FTCA claims are dismissed because the Court lacks subject matter jurisdiction to hear them.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is GRANTED in part and DENIED in part. Only Plaintiff's *Bivens* claim against Knibbs remains. All other claims and Defendants are dismissed from this action as delineated in this Opinion. Defendant's Counsel is directed to submit a completed Scheduling Order to the Court (see attached). The Clerk of Court

---

Apr. 5, 2013) ("Where ... exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein.") (internal citation and quotation marks omitted)).

is directed to mail a copy of this Opinion to *pro se* Plaintiff at the address reflected on the docket.

The Clerk of Court is also respectfully directed to terminate the motion at ECF No. 20.

Dated:    August 17, 2017          SO ORDERED:
          White Plains, New York

_____
          NELSON S. ROMÁN
          United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. May 2014

------------------------------------------------------------x

                                Plaintiff(s),

          - against -

                                Defendant(s).

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

_____ CV _____ (NSR)

------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York

    _____

                          _____

                          Nelson S. Román, U.S. District Judge