USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/24/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUSHAWN ROBINSON,

                Plaintiff,

-against-

JAKE KNIBBS, et al.

                Defendants.

No. 16-cv-03826 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Loushawn Robinson ("Plaintiff") brings this action *pro se* against Jacob Knibbs ("Knibbs") and the United States of America (the "Government") (collectively, "Defendants"), asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680. Before the Court is Defendants' motion for summary judgment as to the *Bivens* claim and to dismiss the FTCA claim pursuant to Federal Rules of Civil Procedure 56(a) and 12(b)(1), respectively. For reasons set forth below, Defendants' motion is GRANTED in its entirety.

## PROCEDURAL HISTORY

    On May 18, 2016, Plaintiff filed his Complaint alleging *Bivens* and FTCA claims against Knibbs, other BOP staff, and the Federal Correctional Institution of Otisville, New York ("FCI Otisville"). *See* Compl. at 3, ECF No. 1. The Court subsequently directed that the caption of the case be amended to include the Government, the only proper defendant to an FTCA claim. (*See* Order (July 21, 2016), ECF No. 11.)

    In December 2016, Defendants moved to dismiss all of Plaintiffs claims. (*See* Defs.' Mot. Dismiss, ECF No. 21.) With respect to the FTCA claim, the Government argued that Plaintiff's claim should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to first

1

submit an administrative tort claim as required by the FTCA. (*Id.* at 10-11.) Along with its motion, the Government submitted a declaration from the BOP, reflecting that BOP had run a search of the records at FCI Otisville and could not locate an administrative tort claim relating to the allegations underlying Plaintiff's FTCA claim. (*See* Johnson Decl. ¶ 2, ECF No. 23.) On August 17, 2017, the Court dismissed all of Plaintiff's claims except for a *Bivens* claim against Knibbs, based on the allegation that Knibbs threatened to send Plaintiff to the SHU if he filled a Percocet prescription that was given to him by an orthopedist. (*See* Op. (Aug. 17, 2017), ECF No. 27.)

During discovery as to the remaining *Bivens* claim, the Government learned that Plaintiff had filed an administrative tort claim related to his FTCA claim. (*See* Letter (June 29, 2018), ECF No. 64.) In light of this new information, the Court vacated its prior dismissal of Plaintiff's FTCA claim. (*See* Minute Entry date 7/6/18.) Defendants were then granted leave to file joint motions to dismiss the reinstated FTCA claim and for summary judgment on the remaining *Bivens* claim. (*Id.*)

## BACKGROUND

The following information is drawn from Defendants' motion papers and Rule 56.1 statement and pertains to the motion for summary judgment based on the *Bivens* claim.

### A. Plaintiff's Injury and Treatment

Plaintiff was an inmate at FCI Otisville from April 9, 2014 to July 8, 2014. (*See* Johnson Decl. ¶ 12 & Ex. A, ECF Nos. 68, 68-1.) On May 21, 2014, Plaintiff injured his left foot while playing basketball at FCI Otisville, where he was an inmate. (*Id.* Ex. K at US01007-09, ECF No. 68-12; Mohan Decl. Ex. A at 16, ECF No. 72-1.) Later that day, Knibbs, an Emergency Medical Technician at FCI Otisville, treated Plaintiff's injury. (Decl. ¶ 2, ECF No. 69; Johnson Decl. Ex. K at US01007-09, ECF No. 68-12.) Plaintiff reported left ankle pain, explaining that he landed sideways on his ankle while playing basketball and "heard a pop." (Johnson Decl. Ex. K at

2

US01008, ECF No. 68-12.) Knibbs wrapped Plaintiff's ankle with an ACE bandage and applied an ice pack to the ankle. (*Id.*) Knibbs also gave Plaintiff three Ibuprofen tablets, one to be taken every eight hours, with instructions to purchase additional doses from the commissary. (Johnson Decl. Ex. K at US01008, ECF No. 68-12.)

On May 27, 2014, Plaintiff returned to FCI Otisville's sick call, at which time an x-ray was taken of his foot. (*Id.* at US01001-03.) The x-ray revealed that Plaintiff had fractured the fifth metatarsal bone of his left foot. (*Id.* at US00999.) Plaintiff was then referred to an outside orthopedist for further consultation and treatment. (*Id.*)

On June 5, 2014, Plaintiff was transported to and examined by an orthopedist at Crystal Run Health Care ("Crystal Run"), where he was provided a boot and prescribed a seven-day course of Percocet. (Johnson Decl. Ex. I at US00004-05, ECF No. 68-9.)

Medical records show that Plaintiff had a follow-up appointment at BOP Health Services with physician assistant Daniel Tarallo ("Tarallo") that same day. (Johnson Decl. Ex. K at US00990, ECF No. 68-12.) According to the records, Tarallo explained to Plaintiff that he could either receive the Percocet, in which case he would "be confined to [his] Housing Unit/Cell" and required to keep his foot elevated, or simply take Ibuprofen, in which case his movements would not be restricted. (*Id.*) The records indicate that Plaintiff opted to take the Ibuprofen. (*Id.*) In addition, BOP scheduling records show that Knibbs was on sick leave starting on June 2, 2014 and was not at FCI Otisville when Plaintiff returned from the external orthopedist. (Knibbs Decl. Ex. A, ECF No. 69-1.)

At his deposition, Plaintiff disputed the content of these records. Specifically, Plaintiff testified that Tarallo was not the first person he met with after returning from Crystal Run, that Tarallo never told him that he would be confined to his housing unit if he decided to take the

Percocet, and that Tarallo never offered Plaintiff Ibuprofen as an alternative to the Percocet. (Mohan Decl. Ex. A, at 57, ECF No. 72-1.) Plaintiff further testified that he first met with Knibbs after returning to FCI Otisville, at which time he was told that he could not take the Percocet and remain in general population. (Mohan Decl. Ex. A, at 53-59, ECF No. 72-1.) According to Plaintiff, Knibbs stated that Plaintiff could use the opportunity to sell the Percocet to other inmates and told Plaintiff that he would therefore be sent to the Solitary Housing Unit ("SHU") unless he took Ibuprofen instead. (*Id.* at 56, 59.) Plaintiff testified that Knibbs effectively left him "no choice" but to take the Ibuprofen. (*Id.*) Plaintiff consequently took Ibuprofen at least three times per day until his pain eventually subsided. (*Id.* at 69.) Plaintiff testified that the BOP records contradicting his testimony must have been altered as part of a cover-up. (*Id.* at 56, 60.)

### B. The Related Administrative Proceedings

On May 27, 2014, prior to his visit to Crystal Run, Plaintiff submitted an informal resolution form ("BP-8") alleging that BOP health staff "didn't really do anything to treat [his] emergency" for seven days and that he was in "a lot of pain." (Johnson Decl. Ex. B, ECF No. 68-2.) On June 2, 2014, BOP staff responded that Plaintiff had since been provided medical treatment and had been referred to a specialist for an examination, though no information about the time or date of that appointment was disclosed "[d]ue to security reasons." (Johnson Decl. Ex. C, ECF No. 68-3.) The next day, Plaintiff submitted a Request for an Administrative Remedy, or BP-9, to the Warden of FCI Otisville. (*Id*. Ex. D, ECF No. 68-4.) Plaintiff alleged that his BP-8 had not been resolved, that he was still in "severe" pain, and that he was being denied proper medical care insofar as he was not prescribed any medication for the pain and had not yet seen a specialist. (*Id.*) Plaintiff wrote that he "[didn't] expect a flawless medical services system, but once [he] received an x-ray and it was determined that [he] had a broken foot . . . [he] should have been sent to the

hospital." (*Id.*) On June 10, 2014, the Warden responded to Plaintiff's BP-9. (*Id*. Ex. E, ECF No. 68-5.) After summarizing the treatment Plaintiff received at FCI Otisville and noting Plaintiff's visit to Crystal Run on June 5, 2014, the Warden concluded that there was "no evidence" Plaintiff was denied medical care. (*Id.*)

On June 25, 2014, Plaintiff appealed the Warden's administrative response, alleging that "certain medical [personnel] failed to properly administer sufficient medical attention as required." (*Id*. Ex. F, ECF No. 68-6.) This appeal was denied upon review of Plaintiff's treatment history, including the fact that Plaintiff accepted Ibuprofen as a substitute to the Percocet he was prescribed during his visit to Crystal Run. (*Id*. Ex. G, ECF No. 68-7.)

On August 25, 2014, Plaintiff appealed this determination. (*Id*. Ex. H, ECF No. 68-8.) This second appeal was denied in December 2015. (*Id*. Ex. I, ECF No. 68-9.)

On February 16, 2016, BOP received from Plaintiff an administrative tort claim, or Form SF-95, related to the allegations in the Complaint. (Scannell-Vessella Decl. Ex. A, ECF No. 71-1.) In the Form SF-95, Plaintiff noted that he had been prescribed Percocet by an "outside doctor," but was told by medical staff at FCI Otisville that he would be placed in "seg" if he took the Percocet. (*Id.*) On July 21, 2016, BOP informed Plaintiff his claim was denied because there was "no evidence that [he] experienced a compensable loss as the result of negligence on the part of any [BOP] employee." (*Id*. Ex. C, ECF No. 71-3.)

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment will not lie where there is a "dispute[] over facts that might affect the

5

outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The Supreme Court has made clear that 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter[.]'" *Westinghouse Elec. Corp. v. N.Y.C. Trans. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Moreover, in deciding a motion for summary judgment, courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal citation and quotation marks omitted).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by showing "that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal citation and quotation marks omitted).

The party asserting that a material fact is genuinely disputed must support his or her assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir.

6

1999). In addition, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v*, 477 U.S. at 252.

Furthermore, Local Rule 56.1(b) requires that the non-moving party's "papers opposing a motion for summary judgment . . . include a correspondingly numbered paragraph responding to each numbered paragraph in the [Rule 56.1] statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local R. 56.1(b). Plaintiff herein failed to submit such a statement as required, and Defendants' statements are consequently deemed admitted for the purposes of this motion. Local Civ. R. 56.1(c); *see Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 658 (S.D.N.Y. 2012). It is, however, well within this Court's discretion to conduct a review of the record to determine whether the facts as alleged are supported. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal citations and quotation marks omitted).

## II.     Dismissal Under Rule 12(b)(1)

Rule 12(b)(1) allows parties to challenge a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank. Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison*, 547 F.3d at 170 (quoting *APWU*

*v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citation omitted).

## DISCUSSION

### I. Defendants' Motion for Summary Judgment as to the *Bivens* Claims

Defendants first argue that Knibbs is entitled to summary judgment as to Plaintiff's *Bivens* claim because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. For reasons set forth below, the motion is granted.[1]

#### A. The PLRA Exhaustion Requirement

Under the PLRA, an inmate is required to exhaust his available administrative remedies before filing a *Bivens* suit in federal court. 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The PLRA applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The purpose of the PLRA is 'to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints international before allowing the initiation of a federal case.'" *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

The applicable procedural rules that a prisoner must exhaust "are defined not by the PLRA, but by the prison grievance process itself[,]" and "[t]he level of detail necessary in a grievance to comply with the grievance procedures will [therefore] vary from system to system and claim to claim[.]" *Jones*, 549 U.S. at 211. Relevant here, the BOP procedural rules provide for a four-step

---

[1] Because the motion for summary judgment is granted on the basis that Plaintiff failed to exhaust his *Bivens* claim under the PLRA, Defendants' remaining arguments in favor of summary judgment are not addressed in this Opinion.

8

administrative grievance system for prisoner complaints. First, the inmate must "present an issue of concern informally" to prison staff, for example by way of a BP-8, so that the prison staff may attempt to resolve the issue. *See* 28 C.F.R. § 542.13(a). The BP-8 requests the inmate to identify the specific issue needing resolution and to explain the issue in detail. *See* 28 C.F.R. § 542.14(c); (Johnson Decl. Ex. B, ECF No. 68-2.) Second, if resolution proves unsuccessful, the inmate may submit a "formal written Administrative Remedy Request," or a BP-9, to the institution staff member designated to receive such requests—in this case, the Warden of Plaintiff's facility. (*See* 28 C.F.R. § 542.14; Johnson Decl. ¶ 5, ECF No. 68.) The BP-9 requires the inmate to identify his or her request. (*See* 28 C.F.R. § 542.14(c); Johnson Decl. Ex. D, ECF No. 68-4.) Third, an inmate may then appeal the Warden's response to the Regional Director on the appropriate form, here a BP-10. (*See* C.F.R. § 542.15, Johnson Decl. ¶ 6, ECF No. 68.) Finally, if unsatisfied with the Regional Director's findings, the inmate may file a Central Office Administrative Remedy Appeal ("BP-11"), with the BOP's General Counsel. (*See* C.F.R. § 542.15; Johnson Decl. ¶ 7, ECF No. 68.) The BP-10 and BP-11 direct the inmate to identify the reason for appeal. (*See* C.F.R. § 542.15(b)(3); Johnson Decl. Ex. F, ECF No. 68-6; Ex. H, ECF No. 68-8.)

"Consistent with PLRA objectives, [the Second Circuit has] held that inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Brownell*, 446 F.3d at 310 (internal quotation marks and citation omitted). "A grievant, therefore, 'need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" *Corbett v. Annucci*, No. 16 Civ. 4492 (NSR), 2018 WL 919832, at *5 (S.D.N.Y. Feb. 13, 2018) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)). Moreover, *pro se* inmates are afforded a "liberal grievance pleading standard," though "the grievance may not be so vague as to

preclude prison officials from taking appropriate measures to resolve the complaint internally." *Id.* (citing *Johnson*, 380 F.3d at 697).

The Supreme Court has clarified that an inmate's failure to exhaust his administrative remedy may only be excused where the administrative remedy, "although officially on the books," was "unavailable" to him because it was "not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). This exception to the PLRA's exhaustion requirement applies in three circumstances: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

As failure to exhaust is an affirmative defense under the PLRA, it is the defendant's burden to establish that the plaintiff failed to meet the exhaustion requirements. *Jones*, 549 U.S. at 216. Moreover, whether the PLRA's exhaustion requirement has been satisfied may properly be decided by a court rather than a jury, as "the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA." *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011) (per curiam).

### B. Discussion

Here, there is no dispute that Plaintiff properly followed the four required steps with respect to his complaint of the general medical care he received after injuring his foot on May 21, 2014. (*See* Defs.' Mem. Supp. Mot. Summ. J. & Dismiss (Defs.' Mem. Supp.") at 12, ECF No. 67.) Rather, Defendants contend that Plaintiff's *Bivens* claim against Knibbs is unexhausted because his grievance forms failed to explicitly state that Knibbs threatened to put Plaintiff in the SHU if

he chose to take the Percocet, and that this is not a circumstance in which the administrative remedies were unavailable to Plaintiff.

At the outset, the Court notes that the PLRA does not require an inmate to specifically name the responsible party in his grievance in order to exhaust his claim where, as here, the prison grievance procedures do not require a prisoner to do so. *See Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (holding that a "*pro se* prisoner cannot be expected to infer the existence of an identification requirement" in such instances). Nor is the inmate required to "explicitly discuss the misconduct . . . alleged in the complaint," so long as the claim was addressed in the prison's denial of the grievance. *Id.* In light of this, Plaintiff's failure to specifically identify Knibbs and explicitly discuss the interaction at issue are not necessarily fatal. *See, e.g.*, *id.* at 127 (grievance alleging that prison's medical department, medical personnel, and prison officials denied inmate medical care sufficient for purposes of PLRA exhaustion requirement); *Jiminez v. Sommer*, No. 14 Civ. 5166 (NSR), 2016 WL 3181155, at *2 (S.D.N.Y. June 3, 2016) (finding claim exhausted where grievance did not specifically identify defendant but prison's response indicated that defendant was investigated as part of the grievance).

Notwithstanding the above, there is insufficient evidence in this case to conclude that Plaintiff's grievance forms adequately alerted prison officials to Plaintiff's claim that Knibbs improperly prevented him from taking his prescribed Percocet.[2] Even when read liberally,

---

[2] At his deposition, Plaintiff suggested that he filed an administrative tort claim regarding his broken foot separate and apart from the grievance that was initiated by his May 27, 2014 BP-8. Mohan Decl. Ex. A at 95-96, ECF No. 72-1. It seems that Plaintiff was referring to the belatedly-discovered Form SF-95, which is only relevant with respect to exhaustion of Plaintiff's FTCA claim. *See* 28 C.F.R. § 543.31; *see also, e.g.*, *Ford v. Spears*, No. 10 Civ. 1314 (RJD) (LB), 2012 WL 4481739, at *8 (E.D.N.Y. Sept. 27, 2012) (noting that "[e]xhaustion under the FTCA is separate and distinct from exhaustion under the PLRA"). Even assuming Plaintiff was referring to a grievance under the PLRA, however, Plaintiff has not supplied any details regarding his filing of that administrative claim, such as the date on which it was initiated or denied. *Id.* Furthermore, the BOP records indicate that no such grievance was filed. Johnson Decl. ¶ 17 & Ex. J, ECF Nos. 68 & 68-11. With no evidence to support Plaintiff's claim that he filed an additional grievance regarding the treatment of his foot injury for purposes of the PLRA, the Court will determine whether Plaintiff exhausted his *Bivens* claim based on the materials that have been provided. *Cf. Trahan v. Capozzola*, No. 12

Plaintiff's grievance forms focus exclusively on the treatment he received from the time of his injury on May 21, 2014 to the date of his visit to the Crystal Run on June 5, 2014. While Plaintiff complained in his grievance forms that prison staff did not prescribe pain medication after an x-ray revealed that Plaintiff broke his foot, Plaintiff did not allege that Knibbs or any other member of the FCI Otisville staff effectively deprived him of the Percocet he was prescribed on June 5, 2014 by threatening to send him to the SHU. Indeed, Plaintiff admitted as much in his deposition. (*See, e.g.*, Mohan Decl. Ex. A at 89, ECF No. 72-1 ("[In the BP-10,] I just mention the inadequate treatment and I don't believe I put . . . what me and Mr. Knibbs went through[.]"); *id.* at 94. ("Well, according to the [BP-]11 the only thing that I really based [it] on was the seven days [before the visit to Crystal Run] that I endured pain without getting any type of really medical assistance."))

Moreover, this is not a case where Plaintiff's claim may be deemed exhausted because it was "specifically addressed in the prison's denial of the grievance and, hence, was properly investigated." *Percinthe v. Julien*, No. 08 Civ. 893 (SAS), 2009 WL 2223070, at *4 (S.D.N.Y. July 24, 2009). To be sure, the official responses to Plaintiff's BP-9 and BP-10—the only forms post-dating his visit to Crystal Run—noted that Plaintiff was prescribed Percocet by an external orthopedist and that prison staff told Plaintiff that he would only be given the prescription if he agreed to confinement to his housing unit. (*See* Johnson Decl. Ex. E, ECF No. 68-5 ("On June 5, 2014, you were seen by the Orthopedic Consultant, who . . . ordered medication[.]"); Johnson Decl. Ex. G, ECF No. 68-7 ("On June 5, 2014, you were evaluated by the Orthopedic Surgeon . . . [who] recommended a prescription for Percocet[.] Following your return to Health Services, you were informed Percocet could only be prescribed if you are confined to your housing unit with

---

Civ. 4353 (JMA) (ARL), 2017 WL 4286620, at *2 (E.D.N.Y. Sept. 27, 2017) (discrediting Plaintiff's testimony that he filed a grievance where he failed to state when he filed it and otherwise proffered no details regarding its submission).

your foot elevated. You accepted Ibuprofen as a substitute with no movement restrictions.")). These responses thus suggest that officials knew Plaintiff was not freely given the prescribed Percocet. They do not indicate, however, that officials were aware of Knibbs' involvement in such interference or that Plaintiff's acceptance of Ibuprofen was the result of a threat to send Plaintiff to the SHU.

In short, the Court concludes that Plaintiff's grievance forms did not provide enough information for officials to investigate his claim that Knibbs, specifically, denied him the Percocet prescribed by his orthopedist by threatening to send him to the SHU if he filled the prescription. *Cf. Stewart v. Richardson*, No. 15 Civ. 9034 (VB), 2019 WL 719638, at *6 (S.D.N.Y. Feb. 20, 2019) (plaintiff failed to exhaust administrative remedies regarding claim that he was housed in the SHU with a sexual deviant and inmates who threw feces, and that he was forced to sleep on the floor, where his grievance only complained that officers were waking him with a high beam flash light while he was living in the SHU).

Having found that Plaintiff failed to exhaust his claim, the Court must determine whether such failure may be excused. Here, the fact that Plaintiff filed and received responses to his general grievances about the medical care he received following his injury on May 21, 2014 demonstrates that the administrative process was not operating as a "dead end." *Ross*, 136 S. Ct. at 1859. Plaintiff's use of the administrative process in connection with this grievance likewise show that the process was not "so opaque that it [became], practically speaking, incapable of use." *Id.* Nor is there any allegation that Plaintiff was prevented from filing a grievance regarding the interaction with Knibbs specifically. As such, there is no basis to excuse Plaintiff from the PLRA's exhaustion requirements.

In light of the above, Knibbs is entitled to summary judgment as to Plaintiff's *Bivens* claim.

## II. Defendants' Motion to Dismiss the FTCA Claim

The Court now turns to Plaintiff's realleged FTCA claim. Here, the Court relies on facts contained in the Complaint and outside documents only as necessary for the Court to establish subject matter jurisdiction. *See Zappia v. Emirate*, 215 F.3d 247 ("[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.").

"The United States, as a sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks and citation omitted). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113.

The FTCA waives sovereign immunity of the United States for common law torts committed by its employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). However, that waiver is limited to circumstances where the plaintiff "first presented the claim to the appropriate Federal agency" and the agency either made a final denial of the claim or failed to make a disposition on the claim within six months after it was filed. *Id.* § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). "[T]he Second Circuit has consistently held that the FTCA's exhaustion requirement is jurisdictional and cannot be waived." *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011) (citations omitted). Finally, the "procedural hurdle [of demonstrating exhaustion] applies equally to litigants with counsel and to those proceeding *pro se*." *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).

In this case, Plaintiff submitted his Form SF-95 to the BOP on January 30, 2016, (Scannell-Vessella Decl Ex. A, ECF No. 71-1), and the BOP did not deny Plaintiff's administrative tort claim until July 21, 2016, (*Id.* Ex. C., ECF No. 71-3.) Plaintiff's commencement of this action on May 18, 2016, (ECF No. 1), was therefore premature, the BOP's eventual denial of the administrative tort claim notwithstanding. *See, e.g.*, *Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 310 (E.D.N.Y. 2008) ("Because [the FTCA's exhaustion requirement] is jurisdictional, the subsequent denial of an administrative claim cannot cure a prematurely filed action.") (citing *McNeil*, 508 U.S. at 113); *Liriano*, 827 F. Supp. 2d at 269 ("The requirement that prematurely filed FTCA claims be dismissed holds even when, as here, the FTCA claims would be ripe if re-filed at the date of the court's decision.") (citations omitted); *Tarafa v. BOP MDC Brooklyn*, No. 07 Civ. 554 (DLI) (LB), 2007 WL 2120358, at *3 (E.D.N.Y. July 23, 2007) ("[A]lthough it is this court's view that dismissing [plaintiff's] FTCA claim and requiring him to re-file is the ultimate exercise of form over substance, this court must dismiss [the] FTCA claim under . . . *McNeil*.") (internal citation and quotation marks omitted).

Accordingly, Plaintiff's FTCA claim is dismissed without prejudice to re-file now that the administrative claim has been fully exhausted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing Plaintiff's *Bivens* claim as against Defendant Knibbs and the United States of America is GRANTED with prejudice. Defendant's motion to dismiss Plaintiff's FTCA claim is GRANTED, without prejudice and with leave to renew.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 66. Plaintiff is granted until July 26, 2019 to replead only his FTCA claim against Knibbs, consistent with this Opinion and Order.

The Clerk of the Court is also requested to serve a copy of this Opinion and Order upon Plaintiff at his last listed address and to file proof of service on the docket.

SO ORDERED:

Dated: June 24, 2019,
White Plains, New York

_____
NELSON S. ROMAN
United States District Judge